IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 28 2002

CLERK

ROBERT G. CATES, Administrator of
the Estate and Personal Representative
of Darwin Tache,

    Plaintiff,

vs.     CIV NO. 01 - 0534 M/WWD ACE

SHANNAN RUIZ, ARTURO RUIZ,
CHILDHAVEN, INC.,
THE UNITED STATES OF AMERICA,
MICHAEL CASTENELL,

    Defendants,

and

CHILDHAVEN, INC., a New Mexico
non-profit corporation,

    Third-Party Plaintiff,

vs.

NEW MEXICO CHILDREN, YOUTH,
AND FAMILIES DEPARTMENT,

    Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before me on a Motion by Third Party Defendant New Mexico Children, Youth and Families Department to dismiss the Third Party Complaint brought against



it for indemnification by Third Party Plaintiff Childhaven, Inc. New Mexico Children, Youth and Families Department argues that the Third Party Complaint fails to state a cause of action upon which relief can be granted. Third Party Plaintiff Childhaven, Inc. has also moved to certify the question of whether an indemnification claim can lie against a state agency such as New Mexico Children, Youth and Families Department. Having reviewed the motion to dismiss, response, reply, two sur-replies and motion to certify, I find that the Motion to Dismiss the Third Party Complaint is well taken and will be granted. The Motion to Certify the issue of indemnification to the Supreme Court of New Mexico is moot as a result of my decision to dismiss the Third Party Complaint and therefore will be denied.

## **FACTUAL BACKGROUND**

This case involves a young Navajo child, Darwin Tache, who was removed from his biological parents by the Navajo Division of Social Services due to abuse in the home. Childhaven, Inc. is a child placement agency licensed by the State of New Mexico to license treatment foster parents. Arturo and Shannan Ruiz applied to Childhaven in 1997 to become licensed treatment foster parents. As part of the state required background investigation of potential foster parents, Childhaven requested a "central clearance" check for reports of abuse or neglect with the New Mexico Children, Youth and Families Department (CYFD). CYFD returned the central clearance checks advising Childhaven that there were no incidents of child abuse or child neglect reported on Arturo or Shannan Ruiz. In fact there was a substantiated incident of physical child abuse reported to and investigated by CYFD on Arturo Ruiz from 1996 and an unsubstantiated incident of emotional child abuse reported to and investigated by CYFD

on Shannan Ruiz in early 1997. But due to a clerical error on the part of CYFD, these incidents were not reported to Childhaven.

Childhaven licensed Arturo and Shannan Ruiz in February 1998 as treatment foster parents. Shortly thereafter Darwin Tache was placed in the Ruiz treatment foster home. On or about June 3, 1998 Darwin suffered a severe head injury while in the care of the Ruiz foster parents. He was taken to University of New Mexico Hospital in Albuquerque where he died on June 5, 1998 of his head injury. Shannan Ruiz was charged with attempted child abuse resulting in death and entered an "Alford" plea to the charge.

After Darwin's death, Childhaven learned from CYFD of the substantiated incident of physical child abuse against Arturo Ruiz and the unsubstantiated incident of emotional child abuse against Shannan Ruiz. On May 11, 2000 Plaintiff Robert Cates, as personal representative of Darwin Tache filed suit against Childhaven, Inc., Arturo and Shannan Ruiz and Michael Castenell, a therapist who was treating Darwin at the time of his death. Childhaven was served on July 11th and answered the Plaintiff's complaint on July 31, 2001. On August 9th Childhaven gave notice of its intent to file an indemnity action against CYFD. The Third-Party Complaint against CYFD was filed on August 14, 2001.

## PROCEDURAL BACKGROUND

CYFD filed its Motion to Dismiss the Third Party Complaint on the grounds that the New Mexico Tort Claims Act, N. M. Stat. Ann. §§ 41-4-1 et seq. (1996), does not waive immunity from liability for CYFD. In its memorandum accompanying its motion, CYFD originally argued that the statute of limitations had run on the Third Party Complaint. This argument was

answered by Childhaven who noted that a claim for indemnification does not begin to run until the judgment or settlement has been paid which underlies the claim for indemnification. *Prudential Lines. v. General Tire International Co.*, 440 F. Supp. 556 (S.D. N.Y. 1977). Fed. R. Civ. P. 14 merely accelerates the time in which the potential third party plaintiff is allowed to bring its claim for indemnity.

CYFD filed its Reply Brief, bringing forth for the first time, its argument that the New Mexico Tort Claims Act barred this Third Party Complaint. I granted leave to file a sur-reply to address this issue which both parties did. Exhibits were attached to most of the subsequent pleadings - portions of depositions, an affidavit and copies of reports. Both parties used these exhibits to further establish the factual background behind the indemnity claim. A factual issue was raised by these Exhibits, whether Childhaven had actual notice that the proposed foster parents had previously been investigated for child abuse charges. The exhibits clearly demonstrated that CYFD made a clerical error when it reported that there were no substantiated incidents of child abuse against Arturo Ruiz. While the exhibits fully illustrate the factual allegations of the Third Party Complaint, they are not relevant to my decision. I have not considered the extrinsic evidence submitted to me in these pleadings in my analysis of this Motion and therefore am not treating this Motion as one for summary judgment. *See Lybrook v. Members of Farmington Mun. Schools Bd. of Education*, 232 F. 3d 1334, 1341-2 (10th Cir. 2000). The allegations of the Third Party Complaint are sufficient, in and of themselves, to resolve whether the Third Party Complaint states a claim upon which relief can be granted.

## **STANDARD OF REVIEW**

The standards of review for a motion to dismiss for failure to state a claim are well established. All well-pleaded factual allegations of the complaint, or in this case the third party complaint, are accepted as true and viewed in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). All reasonable inferences raised in the pleadings are resolved in favor of the Third Party Plaintiff. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998). "A 12 (b)(6) motion should not be granted 'unless if appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *David v. City and County of Denver*, 101 F.3d 1334, 1352 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

For purposes of this Motion to Dismiss, I take the allegations of the Third Party Complaint as true. The allegations that are crucial to the claim for indemnification against CYFD are:

1. CYFD ran a Central Clearance for abuse and neglect on Shannan and Arturo Ruiz and reported to Childhaven that no record of substantiated abuse or neglect existed.

2. Relying on CYFD's determination and representation that there were no incidents of child abuse in CYFD's file, Childhaven issued a license to Shannan and Arturo Ruiz to act as foster parents, and subsequently placed Darwin Tache in the Ruiz's care.

3. Following Darwin's death, a representative of CYFD advised Childhaven that CYFD's records did reflect incidents of child abuse/or neglect concerning Shannan and/or Arturo Ruiz but those incidents were not reported to Childhaven.

4. If Childhaven had been advised that there were allegations of abuse/and or neglect

5

against Shannan and Arturo Ruiz, Childhaven would not have issued the Ruiz's a license as foster parents and would not have place Darwin Tache with the Ruiz's.

## **DISCUSSION**

New Mexico Children, Youth and Families Department is a state agency. It enjoys the protection of sovereign immunity from suits in tort except when its immunity has been waived pursuant to the New Mexico Tort Claims Act, N. M. Stat. Ann. §§41-4-1 et seq. (1996). The Act specifically enumerates those categories for which immunity is waived, §§41-4-5 through 12, 1) the operation or maintenance of motor vehicles, 2) the operation or maintenance of buildings, public parks, machinery, equipment and furnishings, 3) the operation of airports, 4) the operation of public utilities, 5) the operation of medical facilities, 6) the providing of health care services, 7) the construction and maintenance of highways and streets, and 8) damages caused by law enforcement officers.

The Tort Claims Act specifies that it "shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act" and that "no other claim, civil action or proceeding for damages" shall be allowed. N. M. Stat. Ann. §41-4-1A (1996). CYFD employees, whether child protective workers or clerical workers are not mentioned in the specific waivers of immunity listed in the New Mexico Tort Claims Act, see §§41-4-5 to 12 (1996). However, the immunity of law enforcement officers while acting within the scope of their duties is waived by the Act. Childhaven has argued that the CYFD employees are law enforcement officers for the purposes of the N. M. Tort Claims Act and therefore have had their sovereign immunity waived by the Act.

Law enforcement officers are defined by the N. M. Tort Claims Act as "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes". N.M. Stat. Ann. §41-4-3 (D). The cases interpreting this definition have held that a law enforcement officer need only have one of the three duties as his or her principal duty, but have also held that the language must be read in light of traditional duties of law enforcement officers. *Anchondo v. Corrections Dep't*, 666 P.2d 1255, 1257 (N.M. 1983). One's principal duties are those to which the employee devotes the majority of his or her time. *Id.*, at 1257.

"Maintaining public order" has been interpreted in light of the traditional duties of a law enforcement officer. "If the duty is not a traditional duty of law enforcement officers, it does not come withing the meaning of 'maintaining public order' in the statutory definition of 'law enforcement officer'". *Anchondo*, supra at 1257. For example, a mayor and district attorneys are not law enforcement officers under the plain meaning of this statute. *See, Montes v. Gallegos*, 812 F. Supp. 1165 (D. N.M. 1992), *Coyazo v. State of N.M.*, 897 P.2d 234 (Ct. App. N.M. 1995). I must conclude in light of this definition and the cases interpreting the definition of law enforcement officers, that the public employees of CYFD are not law enforcement officers either for purposes of the New Mexico Tort Claims Act.

Childhaven has argued that since the negligent misrepresentation case of *Davis v. Board of County Commissioners of Dona Ana County*, 987 P.2d 1172 (Ct. App. N.M. 1999), was allowed to proceed under the N.M. Tort Claims Act, this case of negligent misrepresentation should also be allowed to proceed under the Act. But *Davis* clearly involved law enforcement officers, county detention center officers, who negligently misrepresented facts concerning a

7

former employee. The misrepresentation in turn caused bodily injury to the plaintiff. The Court noted that the waiver of immunity at issue in this case "is not for public officials as a whole, but only for law enforcement officers whose negligent misrepresentation cause injury". *Davis* at 1182.

I find that there has been no waiver of sovereign immunity under the N.M. Tort Claims Act for the tort of negligent misrepresentation caused by the error made by the CYFD public employees. Therefore, since there has been no waiver of immunity for the underlying tort, I must conclude that the N.M. Tort Claims Act also does not waive immunity for the claim of indemnity premised upon that tort. I find that no claim for indemnity for this tort can be brought against CYFD in this Third Party Complaint. The Third Party Complaint is dismissed for failure to state a claim upon which relief can be granted.

Childhaven has asked me to certify this legal issue to the New Mexico Supreme Court pursuant to N.M. Stat. Ann. §39-7-4 (Repl. Pamp. 2001). They argue that since there are no reported New Mexico appellate cases on the issue of indemnity under the N.M. Tort Claims Act, the New Mexico Supreme Court should be given an opportunity to address this issue. CYFD is opposed to certification. However, I find the language of the N.M. Tort Claims Act quite clear. Having decided that there is no underlying waiver of immunity by the Act and therefore, no action in indemnity against CYFD for this tort of negligent misrepresentation, I find no reason to certify the issue of indemnification. Having made my decision to dismiss the Third Party Complaint, the issue of certification is now moot. Therefore, the Motion to Certify is denied.

## CONCLUSION

The Motion to Dismiss the Third Party Complaint brought by Childhaven, Inc. against the New Mexico Children, Youth and Families Department for indemnification is **GRANTED** pursuant to Fed. R. Civ. P. 12 (b) (6) because the Third Party Complaint fails to state a claim upon which relief can be granted. The Motion to Certify the question of whether a claim for indemnification can be brought against a New Mexico state agency to indemnify another who would be liable for damages as a result of a tort allegedly committed by that state agency is **DENIED**.

_____
SENIOR UNITED STATES JUDGE